IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Eric A. Corbell, | ) | C/A No. 5:13-324-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Holly Hill, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Eric A. Corbell ("Corbell"), filed this action alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., against the defendant, who is properly identified as the Town of Holly Hill ("the Town").[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 22.) Corbell filed a response in opposition (ECF No. 29), and the defendant filed a reply (ECF No. 30). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Corbell, to the extent they find support in the record. Corbell was hired by the defendant as a police officer in June of 2009. In late July of 2011, Corbell began undergoing medical treatment for back pain and on August 4, 2011, notified the Town's police chief that he would likely be required to undergo back

---

[1] The defendant removed this action from the Orangeburg County Court of Common Pleas.

Page 1 of 11



surgery and that he would need a light duty assignment afterward. On September 8, 2011, the police chief sent a memorandum stating that no light duty assignments would be provided to police officers. Corbell underwent back surgery on September 21, 2011, to remove "10% of disc L5." Corbell's surgery was successful and he was cleared for light duty work two weeks post surgery; however, no light duty assignment was provided by the defendant. While on medical leave and prior to his return to work without restrictions, Corbell was terminated in October of 2011. On December 6, 2011, Corbell filed a charge of discrimination based on disability. After receiving a right-to-sue letter, Corbell filed this action.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc.,



477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (ADEA); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995) (holding that the McDonnell Douglas framework applies to claims brought under the ADA).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's



burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is



appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Corbell's Claims**

Corbell asserts violations of the ADA based both upon his termination from employment and the defendant's alleged failure to accommodate his disability.[2]

**1.     Discriminatory Discharge**

To establish a *prima facie* case of discriminatory discharge based upon a disability, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. See 42 U.S.C. § 12112(a); see also Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citing Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696 (4th Cir. 2001). Under the ADA, a "disability" includes:

---

[2] The allegations in Corbell's Complaint which relate to purported violations of the ADA postdate the effective date of the 2008 amendments to the ADA, January 1, 2009; thus, the current version of the statute applies. Accordingly, all references to the ADA statutes in this Report and Recommendation are to the statutes as amended. The court observes that some of the cases cited by the defendant in its memorandum predate the ADA amendments.



    (A)    a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
    (B)    a record of such an impairment; or
    (C)    being regarded as having such an impairment.

42 U.S.C. § 12102(1).

In this case, Corbell's discharge is undisputed. However, even assuming without deciding that Corbell's condition constituted a disability within the meaning of the statute, see <u>Summers v. Altarum Inst. Corp.</u>, 740 F.3d 325, 329-30 (4th Cir. 2014) (finding that a plaintiff, who alleged a temporary injury rendering him unable to walk for seven months, "unquestionably alleged a 'disability' under the ADAAA sufficiently plausible to survive a Rule 12(b)(6) motion"), he cannot establish a *prima facie* case of a discriminatory termination.

With regard to Corbell's termination, the defendant argues that Corbell was discharged for his own misconduct and cannot demonstrate that he was fulfilling the defendant's legitimate expectations at the time of discharge as required by prong three of the *prima facie* test. In analyzing this element to determine satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are considered "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. <u>Thornley v. Penton Pub., Inc.</u>, 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's

honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

Viewing the evidence in the light most favorable to Corbell, the record reflects that while in uniform and on a lunch break from a work-related class in October of 2010, he referred to a Chili's restaurant manager as a "goofball." (Corbell Dep. at 41, ECF No. 29-1 at 20.) Corbell admitted that such behavior was inappropriate and that it resulted in a two-day suspension without pay and the requirement that Corbell write a letter of apology to the manager. (Corbell Dep. at 44, ECF No. 22-21 at 11; see also ECF Nos. 22-9 at 2, 29-5 at 4-5.) Corbell also admits that, on October 16, 2011, he identified himself in an off-duty phone call to police dispatch as "Holly Hill 7," his police identification name, and referred to the dispatch employee as a "knuckle," breaking off his comment but presumably meaning "knucklehead." (Corbell Dep. at 106, ECF No. 29-1 at 36; see also Corbell Dep. at 109-11, ECF No. 22-21 at 22-24.) Corbell, who was medicated and on unpaid leave from surgery, also commented that he couldn't believe that dispatch had gotten "this dumb," and uttered "I swear. [F-ing] dispatch" after he believed the call to be disconnected. (Corbell Dep. at 113-14, ECF No. 22-21 at 25-26; Rickenbacker Dep. at 19:14, ECF No. 22-23 at 19.) Corbell was subsequently terminated on October 20, 2011, for violating the defendant's General Rules of Conduct.

Corbell provides no evidence to show that the defendant did not genuinely believe that Corbell failed to meet the defendant's legitimate expectations at the time of discharge. See Holland



v. Wash. Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007); see also Coco, 128 F.3d at 1179. Corbell's belief that these incidents are not sufficiently serious to justify termination is insufficient to establish a *prima facie* case.  See Evans, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.").  Moreover, while Corbell asserts that the defendant's proffered reasons for discharge are false and pretextual based on the defendant's alleged failure to follow its own policies during the termination, (Pl.'s Mem. Opp'n Mot. Summ. J. at 19-22, ECF No. 29 at 19-22), courts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext.  See, e.g., Duggan v. Sisters of Charity Providence Hospitals, 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment to terminate him, failed to interview witnesses or the plaintiff himself, failed to follow its own policy, and failed to consult with the plaintiff's supervisor before deciding to terminate him); Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."); Babbar v. Ebadi, 36 F. Supp. 2d 1269, 1279 (D. Kan.1998) (stating that evidence that the employer deviated from procedures during the adverse employment action "goes only to process and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for discrimination") (internal quotations omitted); see also Jacobs v. Delta Air Lines, Inc., Nos. 97-6100, 97-6143, 1998 WL 514620, at *3 (10th Cir. Aug. 13, 1998) (stating that plaintiff's assertion of poor investigation "challenges the process applied rather than [the

employer's] purpose or motivation" and cannot support an inference of pretext). Accordingly, even if Corbell could establish a *prima facie* case for this claim, evidence in the record does not permit a reasonable inference that the defendant's stated reason for terminating Corbell was pretextual.

### 2. Failure to Accommodate

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.' " Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (alterations in original) (quoting Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

Corbell alleges that the defendant failed to accommodate his disability by refusing to allow Corbell to work a light duty assignment while recovering from back surgery.[3] Corbell further alleges that the defendant changed the police department's policy regarding the availability of light duty assignments approximately one month after Corbell's notification that he would need back surgery, yet allowed two other employees to work light duty assignments after Corbell's termination. (Pl.'s Mem. Opp'n Mot. Summ. J. at 11, ECF No. 29 at 11; Wunderlich Dep. at 14, ECF No. 29-6 at 7.) However, while the ADA requires employers to make reasonable accommodations for their disabled

---

[3] To the extent the defendant argues that Corbell failed to exhaust his administrative remedies in relation to his failure to accommodate claim (Def.'s Mem. Supp. Mot. Summ. J. at 23, ECF No. 22-1 at 23), the court finds that such claims were sufficiently stated in the narrative of Corbell's sworn statement accompanying his charge of discrimination (ECF No. 22-20 at 2-3) to satisfy the exhaustion requirement. See Evans, 80 F.3d at 963.



employees, 42 U.S.C. § 12112(b)(5), an employer is not obligated to provide the employee the accommodation of his choice. See Hollestelle v. Metro. Wash. Airports Auth., No. 97-1465, 1998 WL 228199, at *3 n.5 (4th Cir. May 8, 1998) (collecting cases); Griffin v. Holder, 972 F. Supp. 2d 827, 849 (D.S.C. 2013) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997)). In this case, the defendant did not provide Corbell the light duty assignment of choice, but did provide Corbell with unpaid leave after the expiration of his paid sick leave to allow time for recovery. (Pl.'s Dep. at 98-99, ECF No. 22-21 at 19-20.) Such leave constitutes a reasonable request and accommodation where it is "(1) for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." Wilson, 717 F.3d at 345 n.7 (citing Halpern v. Wake Forest Univ. Health Sciences, 669 F.3d 464 (4th Cir. 2012) and Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)). Thus, even if Corbell's allegations are taken as true, the evidence demonstrates that the defendant provided Corbell a reasonable accommodation in this case.

## RECOMMENDATION

Accordingly, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 22.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 7, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).